UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br>　　　　Plaintiff,<br>　　v.<br>IRA DWAYNE GIBSON,<br>　　　　Defendant. | Case No. 14-cr-00217-JD<br><br>**ORDER DENYING MOTION TO SUPPRESS**<br>Re: Dkt. No. 12 |

## INTRODUCTION

On June 10, 2014, Defendant Ira Dwayne Gibson filed a Motion to Suppress Evidence and Statements. The motion seeks an order "suppressing all fruits of the unlawful seizure and search of Mr. Gibson's vehicle and person on December 22, 2013." Dkt. No. 12. The Court took argument on the motion at a hearing on July 25, 2014, which the defendant attended. The parties agreed that the Court can resolve the motion without an evidentiary hearing. The motion is denied.

## BACKGROUND

In the early hours of December 22, 2013, CHP Officer Washabaugh and his partner, Officer Koehn, were on patrol in Oakland. Dkt. No. 13, Attach. 3 at 1. While stopped at the intersection of 69th Avenue and International Boulevard in Oakland, Officer Washabaugh saw a blue Buick Regal sedan on International Avenue that appeared to be speeding and weaving from side to side. *Id*. Officer Washabaugh followed Mr. Gibson's car with his patrol car, and his speedometer read 41 miles per hour in a 30 mile per hour zone. *Id*. The officers pulled the car over, and a computer check of the California Department of Motor Vehicles' ("DMV") records

1  showed that the Buick was registered to Mr. Gibson, and that he had a prior conviction in 2007 for
2  Driving Under the Influence of Alcohol. *Id*.

3  After approaching the driver's side, where the window was partially open, Officer
4  Washabaugh smelled a strong odor of alcohol and saw that Mr. Gibson's eyes were bloodshot and
5  watery. *Id*. Mr. Gibson did not perform field sobriety tests as explained and demonstrated, and
6  Officer Washabaugh concluded that Mr. Gibson had been driving under the influence of alcohol.
7  *Id.* He was placed under arrest and searched incident to the arrest. *Id*. at 1-2. A preliminary
8  alcohol screening device detected in Mr. Gibson's breath alcohol levels of .228, .261, and .282 --
9  far above the legal limit. *Id*. at 2.

10  In light of these very high alcohol readings, the officers determined that Mr. Gibson could
11  not lawfully drive his car even if he were to be released from jail after six hours -- the typical
12  minimum time that he could have been released from custody. *Id.* The officers also decided that
13  Mr. Gibson's car could not be left at the scene of the stop, which is a known high-crime area
14  where many vehicles have been vandalized or stolen. *Id*. Consequently, the officers impounded
15  Mr. Gibson's car under California Vehicle Code § 22651(h), which provides that a vehicle may be
16  impounded "[w]hen an officer arrests a person driving or in control of a vehicle for an alleged
17  offense, and the officer is, by this code or other law, required or permitted to take, and does take,
18  the person into custody" and Vehicle Code § 14602.8(a)(1), which provides that a peace officer
19  may immediately cause the removal and seizure of a vehicle when he or she determines that the
20  driver has been convicted of driving under the influence within the past 10 years and the driver
21  either is found to have 0.10 percent of alcohol in his or her blood or refuses to complete a
22  chemical test when requested to do so. *Id.* at 2-3; Cal. Vehicle Code §§ 22651(h), 14602.8(a)(1).
23  Officer Koehn did an impoundment inventory of Mr. Gibson's car while it was parked on the side
24  of the street. *Id*. at 2. During the inventory, he found a handgun loaded with seven rounds of
25  ammunition in the car's unlocked center console. *Id*. Mr. Gibson's car was towed to storage
26  shortly after that. *Id*. at 3.

27  While Mr. Gibson was inside the patrol car, Officer Washabaugh read him his Miranda
28  rights. *Id*. Mr. Gibson waived his rights and agreed to speak. *Id.* at 2. Officer Washabaugh

1  asked Mr. Gibson if the handgun belonged to him. *Id*. Mr. Gibson stated that he "bought that gun a long time ago." *Id*.

Mr. Gibson was initially taken to Glenn Dyer (North County) Jail. *Id*. at 3. At the jail, Officer Washabaugh administered a chemical breath test which revealed that Mr. Gibson had a blood alcohol level of 0.25 and 0.26. *Id*. Mr. Gibson was subsequently transported to Santa Rita Jail. There, deputy sheriff Eng conducted a pat search of Mr. Gibson for contraband and found a plastic bag that contained a white crystalline substance inside ten individually packaged bags. *Id*. The substance tested positive for cocaine. *Id*.

On June 10, 2014, Mr. Gibson filed a Motion to Suppress Evidence and Statements. On July 11, 2014, the United States opposed the motion. Dkt. No. 13. On July 18, 2014, Mr. Gibson replied to the United States' opposition. Dkt. No. 14. On July 22, 2014, the United States filed a response to Mr. Gibson's reply without the Court's leave, and so Mr. Gibson was permitted to file a sur-reply on July 24, 2014. Dkt. Nos. 15, 17.

**DISCUSSION**

Mr. Gibson does not challenge the lawfulness of his stop, the arrest for driving under the influence or the impoundment of his car. He challenges only the lawfulness of the inventory search and whether the gun, his statements about the gun and the drugs subsequently found on his person at Santa Rita Jail should be suppressed as the fruit of an allegedly unlawful search.

**I.  Search of Mr. Gibson's Car And His Statement About the Gun**

Mr. Gibson contends that the warrantless search of his car violated the Fourth Amendment, and that any statements that were the fruit of that unlawful search should be suppressed. Dkt. No. 12 at 3-4. The United States argues that the search of Mr. Gibson's car was a lawful inventory search, and so the gun found during the search, as well as Mr. Gibson's statement about the gun, should be admissible. Dkt. Nos. 13 at 8-10; 17 at 2-3.

The Fourth Amendment protects the right of the people to be free from unreasonable searches and seizures by the government. To execute a search or seizure, the police must obtain a valid warrant or act pursuant to a delineated exception to the Fourth Amendment's warrant requirement. *Katz v. United States*, 389 U.S. 347, 356-57, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

1   If the Fourth Amendment has been violated, the exclusionary rule requires that resulting evidence
2   must be suppressed.  *Mapp v. Ohio*, 367 U.S. 643, 654, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
3   This rule also applies to derivative evidence because it is deemed to be "fruit of the poisonous
4   tree."  *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

5   Impoundment and an inventory search of a vehicle are valid under the Fourth Amendment
6   when conducted pursuant to standardized procedures administered in good faith and not for the
7   sole purpose of investigation.  *Rose v. Loos*, 130 Fed. Appx. 78, 79 (9th Cir. 2005) (citing
8   *Colorado v. Bertine*, 479 U.S. 367, 371-73, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) and affirming
9   validity of impoundment and inventory search of closed backpack that was in accordance with
10  standardized police procedure); *South Dakota v. Opperman*, 428 U.S. 364, 368-69, 96 S.Ct. 3092,
11  49 L.Ed.2d 1000 (1976) (affirming validity of impoundment and inventory search of an unlocked
12  glove compartment that was in accordance with standard procedure); *United States v. Penn*, 233
13  F.3d 1111, 1117 (9th Cir. 2000) (upholding validity of impoundment and inventory search of
14  vehicle stopped for traffic violation)).  This is true whether or not the officer has probable cause to
15  search the vehicle.  *See Bertine*, 479 U.S. at 371-72.  The fact that the officer has discretion to
16  impound the car does not necessarily make the inventory search unconstitutional.  *Id*. at 375-76
17  ("Nothing in *Opperman* or *Lafayette* prohibits the exercise of police discretion so long as that
18  discretion is exercised according to standard criteria and on the basis of something other than
19  suspicion of evidence of criminal activity.").[1]  The goal is to have standard inventory search
20  policies that are enforced to prevent an inventory search from becoming an excuse to rummage
21  around for incriminating evidence.  *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 163, 109 L.Ed.2d 1
22  (1990).  Our Circuit has approved the warrantless inventory searches of vehicles when conducted

---

[1] In addition, "[w]hether an impoundment is warranted . . . depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft."  *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005); *U.S. v. Cervantes*, 703 F.3d 1135, 1142 (9th Cir. 2012) ("The fact that an impoundment complies with a state statute or police policy, by itself, is insufficient to justify an impoundment under the community caretaking exception.").  That standard was met here, as Officer Washabaugh's declaration provided that "Gibson's vehicle could not have been left at the scene because that area of International Boulevard is a high-crime area where many vehicles have been vandalized or stolen."  Dkt. No. 13, Attach. 3.

4

pursuant to standard police procedures aimed at protecting the owner's property and protecting the police from claims of stolen, lost or damaged property.  *See Penn*, 233 F.3d at 1117.

Mr. Gibson does not challenge the CHP officers' decision to impound his car.  He challenges only the officers' search of the unlocked center console of his car, where the handgun was found.  The gist of Mr. Gibson's argument is that the search of the console was unlawful because it was not done pursuant to a standardized, lawful policy.  *See* Dkt. No. 17 at 2-3.

The government initially did not provide enough information about the existence and content of the CHP's inventory search policy.  The United States' response to Mr. Gibson's reply, however, included the relevant CHP procedures for vehicle inventories.  The procedures expressly state that a "vehicle inventory is intended to protect an owner's property and the [CHP] against claims of lost, stolen, or vandalized property."  Dkt. No. 15, Attach. D at 1-7.  They provide that a vehicle inventory "shall be conducted after the vehicle is in lawful custody" and that the inventory "shall list all property contained in legally accessible areas of the vehicle's passenger compartment, glove compartment, console, trunk, and any other compartment or box which may contain property (e.g., utility compartment, tool compartment, or under the seat of motorcycles).  All property located should be opened and inventoried in the Remarks section of the CHP 180."  Dkt. No. 15, Attach. D.  The procedures provide that "[i]f the glove compartment, console, trunk, or box is locked and there is no key or mechanical/electric mechanism to open the area, departmental employees **shall not** force the lock to inventory its contents."  *Id.* (emphasis in original).  Thus, under the applicable CHP policy, officers who have taken lawful custody of a vehicle must list all property contained in an unlocked console of that vehicle.

Because CHP took lawful custody of Mr. Gibson's car and followed standardized protocols to search Mr. Gibson's unlocked center console during an inventory search, the motion to suppress the gun -- and Mr. Gibson's subsequent statement about the gun -- is denied.

The Court reaches this conclusion over Mr. Gibson's main arguments against it.  At the hearing, counsel for Mr. Gibson devoted much attention to the phrase "legally accessible areas" to argue that the CHP policy was effectively meaningless and failed to impose truly standardized procedures on inventory searches.  While that phrase may be rather opaque if taken as a snippet, it

is not unintelligible or unconstrained when read in full context. The phrase must be read with the policy as a whole, and specifically with the direction not to open locked containers. Overall, the policy reasonably communicates that unlocked containers are legally accessible during inventory searches and locked containers are not. That is a sufficient restraint on police discretion during inventory searches under governing precedent. The Court also disagrees with Mr. Gibson's insistence that some physical act in furtherance of impoundment -- namely physically moving the car -- is required before an inventory search can lawfully begin. Mr. Gibson did not present any authority to support that interpretation. And the CHP policy provides that a vehicle inventory may be conducted "when a vehicle is removed, impounded, or stored" -- clearly contemplating impoundment without physical movement as a predicate of an inventory search.

## II.     Search of Mr. Gibson at Santa Rita Jail

Mr. Gibson contends that the government also failed to meet its burden in showing that the narcotics seized from Mr. Gibson's person at Santa Rita Jail, hours after the discovery of the firearm, were untainted by the discovery of the firearm. He asserts that the government has not shown that the drugs are not "the fruit of the poisonous tree." Dkt. No. 14 at 4.

Because the firearm was found during a lawful search of the unlocked console, Mr. Gibson has no poisonous tree on which to pin this argument. The narcotics evidence will not be suppressed.

## CONCLUSION

Mr. Gibson's motion to suppress is denied. The parties are ordered to appear on September 4, 2014 at 2:00 p.m. in the San Francisco Courthouse at 450 Golden Gate Avenue for a trial setting conference.

**IT IS SO ORDERED.**

Dated: August 26, 2014

_____
JAMES DONATO
United States District Judge